Stephen G. Montoya
**MONTOYA JIMENEZ, P.A.**
The Great American Tower
3200 North Central Avenue, Ste. 2550
Phoenix, Arizona 85012
(602) 256-6718
(fax) 256-6667

Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Regina Pangerl, | No. |
| plaintiff, | |
| vs. | **Complaint** |
| Susan Ehrlich, Sheldon Weisberg, and the State of Arizona, | (Jury Trial Demanded) |
| defendants. | |

For her Complaint against Defendants, Plaintiff alleges the following:

1. This is an action against Susan Ehrlich, Sheldon Weisberg, and the State of Arizona for violating the civil rights of Ms. Regina Pangerl.

2. Ms. Pangerl is asserting this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983, as to Defendants Susan Ehrlich and Sheldon Weisberg, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, as to Defendant State of Arizona.

3. This Court has jurisdiction over this civil action under 28 U.S.C. §§1331 and 1343(4).

4. Venue is proper in the District of Arizona under 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f)(3).

1  5.   Ms. Pangerl is a citizen of the United States of America residing in Phoenix, Arizona.

3  6.   Ms. Pangerl is a member of the Church of Jesus Christ of Latter-day Saints.

4  7.   Ms. Pangerl is a graduate of the College of Law of Arizona State University and has been admitted to the practice of law in the State of Arizona by the Supreme Court of Arizona.

7  8.   Ms. Pangerl was employed as a judicial law clerk by the Court of Appeals of the State of Arizona at all times material to this Complaint.

9  9.   Ms. Pangerl's job performance at the Court of Appeals was good to excellent at all times material to this Complaint.

11 10.  The Court of Appeals is a branch of Arizona state government.

12 11.  Susan Ehrlich was a Judge on the Arizona Court of Appeals at all times material to this Complaint.

14 12.  Sheldon Weisberg was the Chief Judge of the Arizona Court of Appeals at all times material to this Complaint.

16 13.  When Ms. Pangerl served as a judicial law clerk in Judge Ehrlich's chambers, Judge Ehrlich made a series of offensive and discriminatory remarks regarding the Church of Jesus Christ of Latter-day Saints and its members.

19 14.  Ms. Pangerl initially ignored Judge Ehrlich's discriminatory remarks hoping that they would stop.

21 15.  When the remarks continued, Ms. Pangerl complained of the remarks to Judge Ehrlich's Deputy Clerk.

16. After Ms. Pangerl complained of the remarks, Judge Ehrlich interrogated Ms. Pangerl about her religious affiliation and commenced a pattern of retaliatory, unjustified, and abusive criticisms of Ms. Pangerl's job performance.

17. Based upon Judge Ehrlich's discriminatory conduct, Ms. Pangerl complained to the Arizona Commission on Judicial Conduct about Judge Ehrlich.

18. Ms. Pangerl also complained of Judge Ehrlich's discriminatory conduct to Chief Judge Sheldon Weisberg, Vice Chief Judge John C. Gemmill, and Court of Appeals Clerk Philip Urry.

19. Under the supervision of Chief Judge Weisberg, the Court of Appeals initially did <u>not</u> investigate Ms. Pangerl's complaint regarding Judge Ehrlich or otherwise take any corrective action regarding the complaint.

20. Ms. Pangerl was ultimately transferred out of Judge Ehrlich's chambers and reassigned to work under Chief Judge Weisberg.

21. After Ms. Pangerl was transferred to Chief Judge Weisberg's supervision, the terms and conditions of her employment with the Arizona Court of Appeals changed for the worst (again).

22. For example, Ms. Pangerl was no longer given regular case assignments and actually had to seek out work to keep busy.

23. Judge Weisberg also ultimately intimidated Ms. Pangerl into terminating her judicial clerkship with the Court.

24. Before Ms. Pangerl complained of Judge Ehrlich's discriminatory conduct to Chief Judge Weisberg, Chief Judge Weisberg already had notice that Judge Ehrlich

was engaging in a pattern of intemperate conduct at the Court of Appeals.

25. Similarly, before Ms. Pangerl complained of Judge Ehrlich's discriminatory conduct to the Arizona Commission on Judicial Conduct, the Commission also had notice that Judge Ehrlich was engaging in a pattern of intemperate conduct at the Court of Appeals.

26. After Ms. Pangerl complained of Judge Ehrlich's discriminatory conduct, Chief Judge Weisberg attempted to cover-up Judge Ehrlich's discriminatory behavior and discredit both Ms. Pangerl's integrity and her allegations against Judge Ehrlich instead of impartially investigating Ms. Pangerl's claims.

27. Similarly, the Arizona Commission on Judicial Conduct failed to take appropriate corrective action in response to Ms. Pangerl's complaints and also attempted to cover-up Judge Ehrlich's misconduct by refusing to reasonably investigate her complaints.

28. Ms. Pangerl gave Judge Ehrlich, Chief Judge Weisberg, and the State of Arizona direct notice of the discriminatory conduct summarized above.

29. Despite such notice, the Defendants failed to meaningfully investigate and remediate Ms. Pangerl's complaints and in fact ratified Judge Ehrlich's discriminatory conduct.

30. All of the acts perpetrated by Judge Ehrlich and Chief Judge Weisberg were done under color of state law.

31. The discriminatory conduct summarized above had a substantial negative impact on Ms. Pangerl's employment with the Court of Appeals.

32. The discriminatory conduct summarized above also adversely impacted Ms. Pangerl's health and continues to do so.

33. Based on the misconduct summarized above, Ms. Pangerl timely filed a Charge of Discrimination and retaliation against the State of Arizona with the United States Equal Employment Opportunity Commission ("EEOC") on November 4, 2005.

34. Ms. Pangerl received a Right to Sue Letter from the EEOC on approximately March 9, 2006, and timely commenced this action within ninety days of her receipt of that letter.

**Wherefore**, Plaintiff respectfully requests the Court to:

A. Issue a declaratory judgment that the conduct of Defendants as described above violated Plaintiff's rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e;

B. Issue an injunction ordering Defendants not to discriminate and retaliate against Plaintiff in the future;

C. Award Plaintiff nominal, compensatory, and punitive damages against Defendants, jointly and severally, in an amount to be determined at trial;

D. Award Plaintiff her attorney's fees and costs under 42 U.S.C. §1988, 42 U.S.C §2000e-5(k) and any other applicable law; and

E. Award Plaintiff all other relief just and appropriate under the circumstances.

Dated this 6th day of June 2006.

**MONTOYA JIMENEZ**
A Professional Association

 s/ Stephen G. Montoya
Stephen G. Montoya
3200 North Central Avenue, Ste. 2550
Phoenix, Arizona 85012-2490
Attorney for Plaintiff

I hereby certify that on June 6, 2006,
I electronically transmitted the foregoing document
to the Clerk's Office using the CM/ECF System for filing
and transmittal of a Notice of Electronic Filing

 s/ Stephen G. Montoya