**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Regina Pangerl,                )<br>                                        )<br>         Plaintiff,                  )<br>                                        )<br>vs.                                     )<br>                                        )<br>Susan Ehrlich, et al.,             )<br>                                        )<br>         Defendants.           )<br>                                        )<br>_____) | CV 06-1464-PHX-MHM<br><br>CV 06-1465-PHX-FJM<br><br>**ORDER** |

Currently before the Court is Plaintiff Regina Pangerl's ("Plaintiff Pangerl") Motion to Transfer <u>Hellman v. Weisberg, et al.</u>, No. CV 06-1465-PHX-FJM, to this Court and Consolidate for Purposes of Discovery. (Dkt.#26). After reviewing the pleadings, the Court issues the following Order.

**I.     Background**

**A.     <u>Pangerl v. Ehrlich, et al.</u>**

On June 6, 2006, Plaintiff Pangerl filed the instant action in this Court. ("Pangerl Action") (Dkt.#1). Plaintiff Pangerl has asserted claims pursuant to 42 U.S.C. § 1983 against Defendants Susan Ehrlich and Sheldon Weisberg, judges of the Arizona Court of Appeals, and claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., against Defendant State of Arizona. (Complaint "Compl." ¶2). Plaintiff Pangerl's Complaint alleges that she is a member of the Church of Jesus Christ of Latter-day Saints and was

discriminated against based upon her religion while employed as a law clerk at the Arizona Court of Appeals. (Id. ¶13). Specifically, Plaintiff Pangerl alleges that Judge Susan Ehrlich "made a series of offensive and discriminatory remarks regarding the Church of Jesus Christ of Latter-Day Saints and its members" while Plaintiff was employed as her law clerk. (Id.). According to Plaintiff Pangerl, even after she complained, the discriminatory remarks continued and she was interrogated about her religious affiliation. (Id. ¶16). In addition, Plaintiff Pangerl alleges that Judge Ehrlich engaged in "a pattern of retaliatory, unjustified, and abusive criticisms of [Plaintiff's] job performance." (Id.). After Plaintiff Pangerl complained of Judge Ehrlich's conduct to the Arizona Commission of Judicial Conduct and to Chief Judge Sheldon Weisberg, Plaintiff Pangerl was transferred from Judge Ehrlich's chambers to Chief Judge Weisberg's chambers. (Id.¶¶17-20). After her transfer, Plaintiff Pangerl alleges that the terms and conditions of her employment deteriorated such as that she was no longer given regular case assignments. (Id. ¶22). Allegedly, Plaintiff Pangerl ultimately was intimidated by Chief Judge Weisberg into terminating her employment with the Arizona Court of Appeals. (Id. ¶23). Plaintiff Pangerl alleges that the conduct of the Defendants has adversely impacted her health and continues to do so. (Id. ¶32). The Joint Case Management Plan submitted by the Parties suggests that the events described above occurred during Plaintiff Pangerl's employment with the Arizona Court of Appeals which began with her hiring in September of 2004 and concluded sometime in July of 2005. (Dkt.#16). Plaintiff Pangerl filed her charge of discrimination on November 4, 2005, and received her right to sue letter from the EEOC on March 9, 2006. (Compl. ¶¶33-34).

### B.    Hellman v. Weisberg, et al.

On June 6, 2006, Plaintiff Luz Hellman's ("Plaintiff Hellman"), filed an action in this District, which was randomly assigned to the Honorable Frederick J. Martone, CV06-1465. ("Hellman Action") (Dkt.#1). Plaintiff Hellman asserts claims pursuant to 42 U.S.C. § 1983 against Defendant Sheldon Weisberg and claims pursuant to Title VII of the Civil Rights Act of 1964 and the Arizona Civil Rights Act, A.R.S. § 14-161, against the State of Arizona. (Dkt.#1; Compl. ¶2). Plaintiff Hellman, a judicial assistant at the Arizona Court of Appeals,

1 alleges that she was unlawfully retaliated against after providing two internal memorandums, 2 one of which was authored by Chief Judge Weisberg, to Plaintiff Pangerl. (Id.¶12-19). 3 These memos were disclosed to the EEOC by Plaintiff Pangerl in support of her EEOC 4 charges against the Arizona Court of Appeals. (Id. ¶16). The Joint Case Management Plan 5 submitted by the Parties suggests that the disclosure of the two memos by Plaintiff Hellman 6 occurred sometime in late November of 2005.(Dkt.#14). Plaintiff Hellman alleges that on 7 November 30, 2005, she informed Chief Judge Weisberg that she provided the memos to 8 Plaintiff Pangerl, which allegedly set off a series of retaliatory acts, such as threats of 9 criminal prosecution, termination and disciplinary reprimands. (Id. ¶¶18-20). Plaintiff 10 Hellman filed a charge with the EEOC on January 5, 2006, and received her right to sue letter 11 on March 9, 2006. (Id. ¶¶27-28).

### C. Plaintiff's Motion to Transfer the Hellman Action to this Court

As noted above, both the Pangerl and Hellman Actions were filed in this District on the same day, June 6, 2006. In the Pangerl Action before this Court, a Rule 16 Conference was held on October 26, 2006, at which time the applicable deadlines were set. (Dkt.#19). On December 4, 2006, Judge Martone conducted a Rule 16 Conference in the Hellman Action and set the appropriate deadlines. (Dkt.#19). On December 13, 2006, Plaintiff Pangerl filed the instant Motion to transfer the Hellman Action to this Court. (Dkt.#26). The Motion is now fully briefed and ready for the Court's consideration.

## II. Analysis

### A. LRCiv. 42.1(a)(1)

Local Rule 42.1(a)(1) for the District of Arizona provides in pertinent part:

> Whenever two or more cases are pending before different Judges and any party believes that such cases (A) arise from substantially the same transaction or event; (B) involve substantially the same parties or property; ... (D) calls for determination of substantially the same questions of law; or (E) for any other reason would entail substantial duplication of labor if heard by different Judges, any party may file a motion to transfer the case or cases involved to a single Judge.

The standard for transfer is similar to the standard for consolidation under Rule 42(a) of the Federal Rules of Civil Procedure and district courts have broad discretion in determining

1  whether to grant such motions. See Investors Research Co. v. U.S. Dist. Ct. for Cent. Dist.
2  of California, 877 F.2d 777 (1989).

3  Plaintiff argues that transfer is appropriate because both cases involve a series of
4  related events, arise under the same statutes, involve many of the same witnesses, and
5  involve many of the same documents. (Dkt.#26, pp.1-2). Defendants, on the other hand,
6  object to transferring the Hellman Action before this Court. Defendants contend that a close
7  analysis of LRCiv 42.1 demonstrates that the stated purposes of transfer are not satisfied by
8  Plaintiff's request. A review of the relevant factors governing transfer supports the
9  Defendants' position.

10  **(1)   Arise From Substantially the Same Transaction or Event**

11  As set out in the factual background discussion, above, it does not appear that the
12  Pangerl and Hellman Actions arise from substantially the same transaction or event. Rather,
13  the cases appear quite distinguishable. For instance, Plaintiff Pangerl's claims arise out of
14  alleged discriminatory and retaliatory actions against her during her employment with the
15  Arizona Court of Appeal beginning in September of 2004 and ending in July of 2005.
16  Plaintiff Pangerl alleges that Judge Ehrlich discriminated against her based upon her religious
17  background and that after Plaintiff Pangerl's complaints, she was retaliated against by Judge
18  Ehrlich and Chief Judge Weisberg. Plaintiff Hellman's Action is factually distinguishable
19  in that her claims arise out of alleged subsequent unlawful retaliation she incurred after
20  admitting to the disclosure of the two internal Arizona Court of Appeals memorandums
21  regarding Plaintiff Pangerl's claims of discrimination. Plaintiff Hellman's disclosure of such
22  memos occurred in late November of 2005, several months after Plaintiff Pangerl's
23  employment with the Arizona Court of Appeals concluded. While there is some relation
24  between the two cases, evidenced by Plaintiff Hellman's alleged disclosure of internal
25  memorandums in response to the EEOC charge filed by Plaintiff Pangerl, the alleged relevant
26  acts supporting Plaintiff Pangerl's and Plaintiff Hellman's claims are clearly distinct and do
27  not arise out of substantially the same transaction or event. Thus, this factor does not favor
28  transfer of Plaintiff Hellman's case to this Court.

1
## **(2)     Involve Substantially the Same Parties**

A review of both Plaintiff Pangerl's and Plaintiff Hellman's lawsuits reveal that the Defendants in both actions are substantially the same. For instance, Plaintiff Pangerl has brought suit against Judge Ehrlich, Chief Judge Weisberg and the State of Arizona. Plaintiff Hellman has asserted her claims against Chief Judge Weisberg and the State of Arizona. However, the commonality of Chief Judge Weisberg and the State of Arizona Court to both Actions is not overly persuasive supporting a transfer of Plaintiff Hellman's case to this Court. For instance, the Plaintiffs in both cases are distinct. Moreover, the State of Arizona is named in this suit based upon the alleged actions of the named individual judges. Thus, it appears that Chief Judge Weisberg is the only named Defendant alleged to have engaged in specific actionable conduct in both cases. Moreover, as noted above, Chief Judge Weisberg's alleged actionable conduct in the Pangerl Action took place during the course of Plaintiff Pangerl's employment which concluded in July of 2005. Conversely, Chief Judge Weisberg's alleged retaliatory conduct in the Hellman Action commenced no earlier than the end of November of 2005. In taking these circumstances into account, the Court finds that this factor does not support Plaintiff's request for transfer.

## **(3)     Calls for Determination of Substantially the Same Questions of Law**

Plaintiff Pangerl has asserted claims of discrimination based upon religion and retaliation in violation of her civil rights against Judge Ehrlich and Chief Judge Weisberg, as well as related Title VII claims against the State of Arizona. Plaintiff Hellman alleges civil rights claims against Chief Judge Weisberg on the basis of retaliation and a related Title VII claim against the State of Arizona. From a broad perspective, the claims alleged in both suits are similar, although Plaintiff Hellman, unlike Plaintiff Pangerl, asserts no claim of discrimination based upon religion. However, in reviewing the specific nature of the retaliation claims, it is apparent to the Court that the claims and questions of law to be decided are somewhat distinct. For instance, in Plaintiff Pangerl's case, her claim of retaliation is based upon retaliatory transfer from Judge Ehrlich's chambers to Chief Judge

1  Weisberg's chambers, after she voiced her complaints of discrimination. In addition, Plaintiff
2  Pangerl argues that the terms and conditions of her employment after her transfer
3  deteriorated. Conversely, in Plaintiff Hellman's case, her claims of retaliation are based upon
4  alleged threats of criminal prosecution and termination as well as disciplinary reprimands and
5  workplace scrutiny. Thus, while both cases involve claims of retaliation, the claims are
6  based upon different events and circumstances relevant to any determination of actionable
7  retaliation. The Court finds this factor does not support transfer.

### (4)     Substantial Duplication of Labor

9  Plaintiff Pangerl argues that transfer is appropriate because both cases involve much
10 of the same discovery and many of the same witnesses. In addition, Plaintiff Pangerl argues
11 that if transfer is not ordered there is a possibility of inconsistent rulings, such as with respect
12 to the propriety of a protective order. However, the Court does not find these arguments
13 persuasive. In reviewing the initial disclosure statements submitted in both cases, it appears
14 that many of the documents at issue in both cases are substantially distinct. (Plaintiff's
15 Motion, Dkt.#26, Exhibits D). In the Pangerl Action, the documents identified in
16 Defendants' initial disclosure bear on Plaintiff' Pangerl's individual employment with the
17 Arizona Court of Appeals and her charge of discrimination. Conversely, in the Hellman
18 Action, the identified documents relate to Plaintiff Hellman and her subsequent claim of
19 retaliation. (Id.). Also, while there does appear to be some overlap of the relevant identified
20 witnesses in both cases, (Plaintiff's Motion, Dkt.#26, Exhibits C, D), this factor does not
21 suggest a duplication of resources given the distinguishing set of facts underlying both cases.
22 Lastly, the risk of inconsistent rulings is not as significant as Plaintiff Pangerl suggests. For
23 instance, the only potential inconsistency identified has to do with the propriety of a
24 protective order over common documents in both cases. Notably, Plaintiff Pangerl identifies
25 no other such risk of inconsistent rulings, such as on the merits of the two cases. In addition,
26 the issue over confidentiality over any common documents is in a different posture in both
27 cases. For instance, in the Hellman Action, Judge Martone recently denied the Defendants'
28 request to file under seal four specific documents and again upon Defendants' motion for

1 reconsideration. (Dkt.#'s 45,53).[1]  However, in the instant case, to date, the Parties have addressed a protective order only as to a broad scope of documents, including documents generated in response to Plaintiff's allegations of improper treatment, administrative matters and matters touching on judicial interpretation and rulings. (Dkt.#38).  To date, in balancing the competing interests identified by the Parties and finding a compelling interest to protect documents that relate or potentially relate to matters involving judicial interpretations and rulings, this Court has found a protective order appropriate.  See Foltz v. State Farm Automobile Insur. Co., 331 F.3d 1122, 1135 (9th Cir. 2003).  However, the Court has made clear that Plaintiff Pangerl is free to identify specific documents that may fall outside the scope of such considerations and bring such matters to the Court.  Moreover, the mere fact that both courts are dealing with issues surrounding the confidentiality of certain common documents is not sufficient to demonstrate a material duplication of labor justifying transfer. As such, given the distinguishing characteristics of both cases, there does not appear to be a material risk of a substantial duplication of labor if the Hellman Action is not transferred to this Court.

### (5) Other Relevant Factors

Counsel for Plaintiff Pangerl and Plaintiff Hellman filed the two actions separately on June 6, 2006.[2]  In addition, counsel has waited until after both cases have proceeded through a Rule 16 conference, at which time both courts instituted the appropriate deadlines. The Defendants note that at the Rule 16 hearing in front of Judge Martone, Plaintiff's counsel was questioned by Judge Martone as to the application of qualified immunity to Plaintiff Hellman's claims. (Defendants' Response, Dkt.#27, Exhibit A, p.17. ll.4-12).  A little over one week later, Plaintiff Pangerl filed the instant Motion to transfer the Hellman Action to

---

[1] It is relevant to note that in the Hellman Action, the Parties apparently agreed to keep certain disputed documents and communications confidential pending Judge Martone's ruling on Defendants' motion to seal.  No such agreement was reached in the Pangerl Action before this Court.

[2] Plaintiff Pangerl and Plaintiff Hellman are represented by the same counsel.

- 7 -

1  this Court. Defendants assert that the timing of the Motion to transfer, without any evidence
2  of any other intervening circumstances, suggests potential forum shopping by Plaintiff
3  Hellman. Notably, there is currently a motion for summary judgment in the Hellman Action
4  addressing the issue of qualified immunity filed on December 22, 2006. (Dkt.#24). While
5  certainly not dispositive of the inquiry, the Court finds that even the appearance of forum
6  shopping militates against transfer.

**III.    Summary**

The Court in the exercise of its discretion and in analyzing the relevant factors of LRCiv. 42.1(a)(1) finds there is an insufficient basis presented in support of transfer.

**Accordingly,**

**IT IS HEREBY ORDERED** denying Plaintiff's Motion to Transfer <u>Hellman v. Weisberg, et al.</u>, No. CV 06-1465-PHX-FJM, to this Court and Consolidate for Purposes of Discovery. (Dkt.#26).

DATED this 28th day of February, 2007.

_____
Mary H. Murgula
United States District Judge