**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Regina Pangerl, | No. CV 06-1464-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| Susan Ehrlich, et al., | |
| Defendants. | |

Currently before the Court is the discovery dispute between Plaintiff Regina Pangerl ("Plaintiff") and Defendants Susan Ehrlich, Sheldon Weisberg, the State of Arizona ("Defendants") and non-party Arizona Commission on Judicial Conduct (the "Commission" or "CJC"). The Court heard oral argument regarding this dispute on April 4, 2007.

**I.    Background**

The three issues briefed and argued on April 4, 2007 were: (1) whether collateral information or "other conduct" of Defendant Judge Susan Ehrlich ("Defendant Ehrlich") sought by Plaintiff is subject to discovery;  (2) whether documents from the Arizona CJC generated in response to Plaintiff's complaint regarding alleged discrimination while employed by the Arizona Court of Appeals  is subject to discovery; and (3) whether Plaintiff's own documents, including her diary of events, kept while employed with the Arizona Court of Appeals are subject to the Court's confidentiality order. At the hearing on

April 4, 2007, the Court issued a ruling from the bench addressing the first issue by holding that such "other conduct" of Defendant Ehrlich is subject to discovery and is relevant within the context of Rule 26(b)(1) of the Federal Rules of Civil Procedure.  Moreover, because such conduct does not appear to relate to matters involving judicial rule or judicial deliberations, the discovery does not appear to fall within the scope of the Court's confidentiality order. (Dkt.#43).  As to the third issue, the Court directed an in camera review of the diary kept by Plaintiff during her employment with the Arizona Court of Appeals.  At the hearing, the Court, in making a preliminary assessment, noted that to the extent the diary does not relate to specific cases before the Arizona Court of Appeals, the diary would likely fall outside the scope of the Court's confidentiality order.[1]  Lastly, as to the issue of discovery regarding investigative documents generated by the CJC, the Court instructed that it would take the matter under advisement and render its ruling.[2]

**II.     Application of the Court's Confidentiality Order to Plaintiff's Diary**

After conducting an in camera review of the substance of Plaintiff's diary, the Court finds that the majority of the information related in Plaintiff's diary of events commencing on Wednesday October 20, 2004 through February 10, 2005, falls outside the scope of the need of a confidentiality order.  Plaintiff's diary describes events and incidents with members of the Arizona Court of Appeals, including Defendant Ehrlich and Defendant Judge Sheldon Weisberg ("Defendant Weisberg") that appear relevant to Plaintiff's claims of discrimination and retaliation.  These events touch on Plaintiff's employment claims and there is no reason that such events should be kept from public view, especially in light of the fact that it is the Plaintiff herself who drafted the diary.  See Foltz v. State Farm Auto Ins. Co., 331 F.3d 1222, 1135 (9th Cir. 2003) (noting that there is "a strong presumption in favor of access to court

---

[1] Plaintiff's counsel informed the Court that Plaintiff has no objection to redacting from Plaintiff's diary the names of cases discussed and considered by the Arizona Court of Appeals.

[2] Plaintiff's counsel also informed the Court that Plaintiff would not object to the CJC documents, if produced, falling within the scope of the Court's confidentiality order.

- 2 -

records."). Moreover, the Plaintiff has agreed to redact the case names from Plaintiff's diary in order to comply with the Court's confidentiality order. The Court finds such action necessary in order to preserve the confidentiality and integrity of judicial discussions touching on cases before the Arizona Court of Appeals. As such, the Court directs that before Plaintiff's diary is made available as public record, Plaintiff is directed to redact the names and case identifying information discussed in the diary.[3]

### III.  Discovery of Arizona CJC Investigative File

Non-party CJC seeks to preclude the Plaintiff from gaining access to the CJC's investigative file generated in response to Plaintiff's CJC complaint against Defendant Ehrlich filed in 2005.[4] The Commission does not contend that the file does not possess relevant information under the umbrella of Rule 26 of the Federal Rules of Civil Procedure, but rather that the file is confidential as a matter of law.

The Commission relies on Rule 9 of the Rules of the Arizona Commission on Judicial Conduct. Specifically, Rule 9 provides in pertinent part:

> (b)  Confidential matters. All commission correspondence, draft documents, computer records, investigative reports, attorney work product, commission deliberations, and records of informal proceedings are confidential.

Moreover, the Commission notes while Rule 9(c) may provide for limited discretionary disclosure in certain instances, the Commission has properly exercised that discretion by denying Plaintiff's request to release any of the investigative documents. Rule 9(c) provides in pertinent part:

> The commission may disclose a complaint to a judge and a judge's response to a complainant at any time. It may also disclose confidential information to confirm a pending investigation or clarify proceedings in a case in which an

---

[3]Plaintiff's counsel and Defendants' counsel are to meet and confer before the diary is made available as public record to ensure that there is no dispute as to the redaction of certain information.

[4]The CJC is a non-party to this litigation; however, the CJC is represented by the same office as the named Defendants and Defendants' counsel has briefed and argued the position of the CJC to this Court.

> investigation has become public; to explain the final disposition of a complaint; to protect individuals, the public, or the administration of justice; and to comply with official requests from agencies and other organizations involved in criminal prosecutions, bar discipline investigations, or judicial nomination, selection and retention proceedings.[5]

The Commission responded via letter on February 15, 2007, to Plaintiff's subpoena duces tecum by objecting to the production of any investigative documents generated in response to Plaintiff's allegations of misconduct against Defendant Ehrlich (CJC case number 05-0117). (Defendants' Brief, Dkt.#42, Exhibit C). In addition to the confidential treatment of such documents, the Commission relies on persuasive state authority to support its position. For instance, in <u>Garner v. Cherberg</u>, 111 Wash.2d 811, 765 P.2d 1284 (Wash. 1988) the Rules Committee of the Washington state legislature issued a subpoena duces tecum to the state Commission on Judicial Conduct seeking investigative documents generated by the Commission regarding the conduct of a state court judge. <u>Id.</u> at 820. The Washington Supreme Court quashed the subpoena finding that confidentiality of the Commission "essential to the preservation of fundamental judicial independence." <u>Id.</u> The court noted multiple factors that support such confidentiality:

> (1) encouraging participation in the disciplinary process by protecting complainants and witnesses from retribution or harassment, and reducing the possibility of subornation of perjury; (2) protecting the reputation of innocent judges wrongfully accused or misconduct; (3) maintaining confidence in the judiciary by avoiding premature disclosure of alleged misconduct; (4) encouraging retirement as an alternative to costly and lengthy formal hearings; and (5) protecting commission members from outside pressures.

<u>Id.</u> (citing <u>In re Deming</u>, 108 Wash.2d 82, 736 P.2d 639 (1987)).

---

[5]Plaintiff relies on the most recent version of Rule 9(c) which contains the following additional information in comparison to Rule 9(c) in effect at the time of Plaintiff's CJC complaint in 2005:
> Unless otherwise ordered by the commission complainants, respondent judges and witnesses are not prohibited from disclosing the existence of proceedings or from disclosing any documents or correspondence served on or provided to those persons.

Regardless, of the fact that the 2005 version is controlling, it appears to be a distinction without difference as Plaintiff only seeks documents directly from the CJC itself.

- 4 -

In addition, the Commission cites the Court's attention to the decision in <u>Stern v. Morgenthau</u>, 62 N.Y.2d 331, 465 N.E.2d 349, 476 N.Y.S.2d 810 (1984) where the New York Court of Appeals reversed the lower appellate court's decision denying the state Commission on Judicial Conduct's motion to quash the discovery of Commission records in response to a grand jury subpoena in furtherance of an investigation involving two judges. <u>Id.</u> at 333-34. The New York Court of Appeals recognized that judges are also subject to criminal prosecution, but held that the grand jury had to yield to the confidentiality of the Commission. Specifically, the court stated that "the responsibilities of the Commission ... transcend the criminal prosecution of individuals. ... [and that] [e]xperience teaches that the effective performance of [the Commission's investigative] function necessarily requires the free flow of information to the Commission and the confidentiality of its proceedings until wrongdoing is established." <u>Id.</u> at 339. Lastly, the Commission questions the true motive of the Plaintiff in seeking these documents considering the past press coverage provided to this case. As such, the Commission objects to the production of any portion of the CJC investigative file made in response to the CJC complaint filed by Plaintiff against Defendant Ehrlich.

In opposition, Plaintiff asserts that she must be given access to the CJC file as it likely possesses relevant information to her case and thus is authorized under the Federal Rules of Civil Procedure. <u>See</u> Rule 26(b)(1) Fed.R.Civ.P. ("relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence..."). Such information identified by Plaintiff consists of potential admissions by Defendant Ehrlich that may be admissible at trial as well as witness interviews that provide probative information to Plaintiff's claims. Plaintiff argues that under Rule 9(c), the CJC clearly has the discretionary authority to disclose information relating to investigations and there is no reason that the CJC's discretion should be used not to disclose the investigative file considering the importance of Plaintiff's right to obtain discovery regarding her civil rights claims. Finally, Plaintiff argues that none of the information at issue is privileged or confidential under federal law and that Plaintiff's reliance upon state

1  authority is misplaced in the context of this federal civil rights suit. In support of this
2  position, Plaintiff cites the Court's attention to the Ninth Circuit's decision in <u>Agster v.</u>
3  <u>Maricopa County</u>, 422 F.3d 836 (9th Cir. 2005). In <u>Agster</u>, a civil rights action, the Ninth
4  Circuit affirmed the district court's decision finding that a medical mortality peer review file
5  regarding county medical records generated in response to an inmate death while in custody
6  was subject to discovery under federal law in opposition to an Arizona state statute, A.R.S.
7  § 36-445.01, which provided that such records were confidential and not subject to
8  discovery. <u>Id.</u> at 838-839. As such, Plaintiff requests the Court issue an order compelling
9  the Commission to produce the CJC investigative records.

10  In reviewing the arguments and authorities advanced, it is quite clear that there are
11  strong reasons both in support of and against the discovery of the CJC file regarding
12  Plaintiff's complaint to the CJC. For example, as stated in the Defendants' brief and the
13  affidavits of Mr. Keith Scott and Ms. Linda Haynes[6] witness interviews conducted in
14  response to CJC complaints during the informal proceedings stage are confidential and
15  witnesses are instructed as such. (Dkt.#42, Exhibits A & B). Thus, to authorize discovery
16  of such witness interviews now would be inconsistent with what the witnesses were
17  instructed when they came forward to the CJC with relevant information. More importantly,
18  any deviation from the confidentiality associated with such proceedings may bear on any
19  future investigations and creates the potential for a certain chilling effect upon forthcoming
20  witnesses. Moreover, permitting discovery of the CJC investigative file also creates the
21  impression that any other such complaints filed against other judges could also be subject to
22  discovery based upon the premise of a federal lawsuit against the respective judge. The
23  Court recognizes such considerations as they support denying discovery of the CJC
24  investigative file in this case.

---

[6] Mr. Scott is the Executive Director of the CJC and Ms. Haynes is a staff attorney for the agency and was assigned to investigate Plaintiff's CJC complaint in 2005. (Dkt.#42, Exhibits A & B).

However, while the Court appreciates the arguments advanced by the Commission, through Defendants' counsel, regarding the confidentiality of its informal investigations and documents, the Court finds this case provides sufficient circumstances supporting discovery of the CJC investigative file. Plaintiff's Complaint asserts federal civil rights claims based upon alleged discriminatory treatment she incurred while employed with the Arizona Court of Appeals and most significantly during her time as law clerk for Defendant Ehrlich. As with any such case alleging discrimination in the workplace, the Plaintiff is clearly entitled to discovery that may produce information relevant to her case. Moreover, this Court is not bound by the Arizona and state law authority cited by the Defendants in support of their confidentiality argument. As recognized by the Ninth Circuit's review in Agster, this Court must look to federal law to determine whether the CJC file is confidential or privileged. Id. at 839 (noting that no court in the Ninth Circuit recognized privilege cited by the defendants).[7] Notably, the Commission cites no federal authority suggesting that the investigative information is somehow privileged or confidential under federal law. Thus, this Court's decision is based upon the balancing of Plaintiff's right to obtain such discovery and the interests associated with confidentiality of the CJC investigation. In performing this test, the Court finds the Plaintiff's right to obtain such discovery supersedes. Based upon the nature of the allegations and the lack of any federal authority supporting the non-disclosure of the CJC investigative documents, the Court finds that Plaintiff is entitled to discover the relevant portions of the file. However, while the Court will overrule the Commission's objection to production of the CJC file, the Court will first perform an in camera review of the documents to verify that the information within the file provides relevant information to Plaintiff's claims. To the extent any portion of the file is relevant, it will be turned over to

---

[7] In addition, at oral argument, Defendants' counsel proposed that this matter be certified to the Arizona Supreme Court under A.R.S. § 12-1861. However, such action is appropriate where the federal court is applying state law and seeks clarification or direction as to the state authority. This case does not appear to deal with such a situation as the Court is applying federal law.

- 7 -

Plaintiff subject to the terms of the Court's confidentiality order. In making this determination, the Court finds it important to note that the investigative documents, to the extent they are relevant and thus subject to discovery, will not become subject to public review due to the application of the Court's confidentiality order. Therefore, given the confidentiality afforded to the documents, the potential chilling effect, discussed above, may be minimized.

## IV.   Summary

The Court finds that the Plaintiff's diary does not fall within the scope of the Court's confidentiality order. However, the Court directs that before the diary becomes available as public record that any case names or case identifying information be redacted. In addition, the Court finds that the CJC investigative file generated in response to Plaintiff's complaint against Defendant Ehrlich is subject to discovery assuming that the information is relevant to Plaintiff's claims. The Court will first conduct an in camera review of the file to determine whether the information is relevant to this litigation and will then turn any relevant portion over to Plaintiff, subject to the terms of the Court's confidentiality order.

**Accordingly,**

**IT IS HEREBY ORDERED** overruling Defendants' objection to the disclosure of Plaintiff's diary outside the scope of the Court's confidentiality order. However, prior to any such disclosure Plaintiff is directed to redact any case names or identifying case information.

**IT IS FURTHER ORDERED** overruling the Commission's objection to Plaintiff's subpoena duces tecum regarding the discovery of the CJC investigative file generated in response to Plaintiff's CJC complaint against Defendant Ehrlich. The CJC is directed to submit the investigative file to the Court for an in camera review on or before May 15, 2007. To the extent the information is relevant to Plaintiff's complaint, the file will be turned over to Plaintiff. Any portion of the file turned over to Plaintiff is subject to the Court's confidentiality order.

1  **IT IS FURTHER ORDERED** directing Plaintiff and Plaintiff's counsel not to release
2  any portion of the CJC investigative file to the public or media, should the Court release any
3  portion of the CJC file.

4  DATED this 3rd day of May, 2007.

_____
Mary H. Murgula
United States District Judge